Good afternoon, Mr. Niemann. You may proceed. Your microphone is muted. Thank you, Your Honor. My name is Nate Niemann, and I represent the appellant Kurt Harrington. Mr. Harrington was a defendant in a criminal case in the Southern District of Iowa, and I'd like to briefly touch on the procedural history of this case to jog the court's memory on that because it bears pretty directly on the issues that we're here for today. So Mr. Burge was charged with a number of counts, and he pled to a couple, and a couple went to trial, but he was ultimately convicted of delivering a controlled substance that resulted in a young man's death. And after he was convicted, he was sentenced to life imprisonment, and he appealed. That was affirmed by the Eighth Circuit Court of Appeals, and his appeals seemingly seemed to be over at that point. However, a case which actually wended its way through this circuit, the United States v. Burge, that case went up to the Supreme Court, and the Supreme Court determined that the death results enhancement that Mr. Harrington was subject to was required an additional step in that the government had to show that the controlled substance was not just a contributing factor but the but-for cause of the death. So Mr. Harrington then filed a petition for rid of habeas corpus in the Eastern District of Kentucky where he was incarcerated. That petition was denied, and then it went up to the Sixth Circuit Court of Appeals, and the Sixth Circuit reversed. And they found that because Burge is retroactive, Harrington was entitled to an evidentiary hearing to determine whether it was more likely than not that no reasonable juror would have convicted him if the proper jury instruction was given. So instead of having an evidentiary hearing, the parties entered into this agreement and stipulation, which was based in part on an agreement and stipulation that had previously been entered in Mr. Harrington's co-defendant's case, Mr. Faulkner. And so the court vacated the judgments of conviction on the case on the counts involving the death results enhancement. The case went back to the district court. The parties had disagreement over what the term vacated means in the agreed order. Is that before us on Appeal Council? In other words, do we only have double jeopardy, or do we have that disagreement about the order also before us? It's just a double jeopardy issue. Thank you. And at any rate, when Mr. Harrington got back into the district court, he filed a motion to dismiss based on double jeopardy grounds. And so I'd like to say what this case isn't. And that's, first of all, this isn't a case like Davies that this court recently decided. It's not a Rahafe-type case where the Supreme Court determines that there's an additional element that needs to be proven, and the government is given a chance to prove that additional element. What makes this case different from that line of cases, of which there are many, is that the parties entered into a stipulation in the district court in which the government acknowledged that even under the heightened standard, that it would not have been able to meet its burden of proof. And that is a very unique feature of this case. Judge Gardner was asking a question. Go ahead, Judge. Did that stipulation say that they would not or that they had not? The stipulation stated that at Petitioner Faulkner's trial, there was no proof the heroin the conspiracy distributed was the but-for cause of the victim's death. The evidence presented via the autopsy showed the victim died from ethanol and heroin intoxication. And then it states further in the stipulation that there was no evidence presented at the trial to show that the victim's use of the heroin distributed by the conspiracy was sufficient to cause the death. That's not in this case, though, counsel, right? That's not in the order I'm looking at in Harrington v. Orman. It's cited in my brief. It's at the district court docket 453-3, page 4 and 5. Well, communicate with me here. I have the agreed order in judgment that's in Harrington v. Orman in eastern Kentucky. It doesn't have those words in it, does it? The agreed order does not, but the stipulation of the parties that was attached to the government's response on which the agreed order is based contains that stipulation. Okay, now I understand. All the order has is the simple sentence. The government has stipulated that Harrington's convictions and life sentences should be vacated, right? That's correct. Thank you. And what I was going to ask you before the other question was, boy, when I look at the holding that ends the case of Davies, it's very well written and says, we, a reviewing court, determines that the evidence presented at trial rendered insufficient by a post-trial change in law. Double jeopardy concerns do not preclude the defendant from retrying, preclude the government from retrying a defendant. Why didn't that control this case? I know you went by it quick, but tell me why. Davies is distinguishable from this case because it's not just a change in the law. So if this was simply a situation where the government had basically a higher burden, and I think that the government would agree that they do now. In order to show the death results, they have to show that it was the sole factor or the but-for factor not contributing. So they have to work a little bit harder now. And the government's argument is essentially, well, it's only fair that you give us a chance to put forth the evidence that we couldn't. And our position is that the only way that you're going to be able to supply that evidence is if you somehow change the facts of the case. And in this case, it's not like the government in a Rahave case simply has to put forth additional evidence that the defendant knew that he was a convicted felon. In this case, the government's going to have to, under the facts of this case, the government is not going to meet its burden of proof because it's not going to be able to change the fact that the death was caused by a combination of ethanol and heroin. So that really goes to the issue here is if the government isn't going to be able to muster the evidence on retrial, then he shouldn't be tried. And in fact, when this case— Wait a second. I want to understand your argument. You're saying that if it's a combination, it can't meet the barrage test so that if it's alcohol and drugs, it just doesn't suffice? I'm just saying that based on the record that we have and the testimony from Dr. Nachelski, I think is the way that his name is pronounced, that that would not be able to meet that heightened standard. Well, I agree, but they didn't ask the question. I mean, my understanding of causation here is that when you have but-for causation, you just need to say, is this the but-for cause of the death? Is it one of the but-for causes? And there could be more than one but-for cause. Am I wrong about that? And so if he were asked the question, he could answer yes, it was absolutely essential to his death. Well, first of all, I respectfully disagree that there could be multiple but-for causes because logically there could really only be one but-for cause because if you remove that, then it wouldn't be but-for. But with respect to the facts here, they actually, in the examination of the medical examiner, the parties actually tried to get into that, both during direct examination and cross-examination, and basically the doctor said, look, I can't tell you which thing did what. I'm just telling you that the combination of these two substances is what caused his death. So I don't know if that answers your question, but I don't think that it's a matter of simply asking the doctor the right question the second time around. Well, I don't want to beat you up on this, but under your theory, what you're telling me is that there is no but-for cause. The alcohol can't be a but-for cause. The drugs can't be a but-for cause. Because there's a combination, there is no but-for cause, and I don't think that's how but-for cause works. I think you asked, but for either of these substances, would he have died? Well, I think that one of the important facts is that the doctor testified that the victim could have consumed twice as much of the controlled substance that was in his system, and it would still be at a therapeutic dose. So under those facts, I don't see how the government is going to be able to prove that a therapeutic dose of heroin would be the but-for cause of the death. But the fact that the government might not carry the day in the end doesn't necessarily mean that there was a double jeopardy violation, does it? That's why we're here. We're here on interlocutory appeal on a double jeopardy question, not ultimately will the government win. I understand, Your Honor, and the overarching point that I'm trying to make is that this isn't a case where there's a piece of evidence missing that the government can easily supply at a new trial. Because that evidence could have been adduced at the original trial, and it wasn't. And the reason that it wasn't is because the facts do not bear that out. Well, we don't know that. I mean, it may have been that it wasn't adduced because it wasn't required at the time. Your Honor, I see that my time is up, and I'd like to reserve my remaining time for rebuttal. Very well. Mr. Cronk? Good afternoon. May it please the court and Mr. Neiman. I am the prosecutor that handled this case. I was the prosecutor involved in 2008 when this death happened. Mr. Harrington is making much more of the underlying orders than they are. They are not a prediction or a decision about the future. They are a decision when read in context that properly held that Mr. Harrington was convicted under this court's McIntosh standard, which, by the way, was prosecuted by my office, that a contributing cause was all that was needed in the resulting in death analysis. Burrage came out procedurally long after Mr. Harrington was convicted, and we agreed after, unfortunately, Mr. Faulkner's case was resolved in a manner we thought was a mistake, but we agreed to be fair to Mr. Harrington and allow his matter to come back to district court so that we could try him under the proper standard. There is no decision that Mr. Neiman has cited that provides for what he's asking for, which is an underlying decision that predicts the future of what the government can do at a trial. And not only that, he is wrong. If we go to trial, there is other evidence that the government could deduce that would much more strongly show that Mr. Van Ho died and the but-for cause of his death was the ingestion of heroin. We did not call a toxicologist. We did not need to call a toxicologist at that trial. Not only that, Dr. Nuschelski said that the 0.19 blood alcohol content that Mr. Van Ho had in his system is not normally associated with death. Dr. Nuschelski is not a toxicologist, and he is not going to change his opinion that this was a mixed drug intoxication because, in fact, it was a mixed drug intoxication, ethanol and heroin. Had we been able or required to present evidence of the but-for cause, we did, and we would have. And the last thing I want to point out is that Mr. Van Ho's body was found after he ingested heroin, slumped over on his couch with his thumb near the injection site of the heroin and a heroin syringe in front of him. He did not ingest any alcohol. There's no evidence that he was capable of ingesting alcohol after he ingested this heroin. The heroin was the but-for cause. I appreciate Mr. Neiman fighting for Mr. Harrington. But when this matter goes back to the district court, as it should, and the government has an opportunity to show that heroin was the but-for cause of death, Mr. Harrington will have a chance to defend under the proper standard. But as Judge Benton pointed out, in Davies, in Burks, in Lockhart, in Ellison, the Fourth Circuit case that we cited, in all of those cases, jeopardy does not attach when there's an intervening change in the law. And there would be no double jeopardy here if Mr. Harrington is required to defend a charge and the government's allowed to prosecute under the proper standard of Burrage. Unless there's any questions, I'll yield the rest of my time. Mr. Kroc, I have a couple just out of curiosity. You alluded to a so-called mistake. Was that an agreement by a different U.S. attorney's office? Is that how that occurred? I wish I could tell you how it occurred, but it occurred without my knowledge or without the knowledge of the district court in Iowa. There was some consultation with a lawyer in Des Moines, but I was not included in any of those discussions. And that lawyer was not familiar with the underlying facts of the case. And, of course, that related to Mr. Faulkner. Mr. Faulkner came back and was resentenced in front of Judge Jarvie after the decision was made that his underlying convictions would stand and the resulting death was vacated. We probably could have had the option back then to retry Mr. Faulkner, but he got a 30-year sentence, and the government was satisfied with that. All right. And if you prevail here, what do you anticipate happening before the district court? A trial before a jury on the sole question of Bud Far Cause? That's what Mr. Harrington told the judge he would do. And I think that's something we're going to have to discuss with the district court. I've made it clear that if we have to retry the conspiracy underlying the distribution and we have to retry the distribution of the heroin, we're prepared to do that. It seems a little unnecessary and probably not even right to retry him for distribution involving cocaine-based since nothing about Burrage had anything to do with that. So it's almost like we have an underlying conviction for conspiracy to distribute cocaine-based that I don't think we need to revisit. But I do think we need to revisit the sentence for that offense because it's tied to the other drug. Seeing no other questions, Mr. Nieman, your rebuttal. Thank you, Your Honor. I'd like to return to the court's question earlier about Davies and how this case is distinguishable. I found in my notes a passage from Davies that states that other circuits considering this issue agree that where a reviewing court determines that the evidence presented at trial has been rendered insufficient only by a post-trial change in the law, double jeopardy concerns do not preclude the government from retrying the defendant. So this case is different because it's not rendered insufficient only by a post-trial change in the law. The defendant's convictions and sentence were vacated as a result of the government's stipulation that the evidence adduced at trial would be insufficient. So this wasn't a situation where the parties… Wait, wait, wait. Insufficient because of a change of law, Burrage, right? Well, it didn't… I mean, their representation of the facts would be insufficient under Burrage. That's the point that I'm trying to make. The stipulation is only in light of Burrage. We didn't prove enough, right? That's certainly the government's reading of it. Our reading of it is different, but that's the government's position. Well, what's your reading that would make sense? Well, our reading is that the evidence as… If you look at the… Going back to the original stipulation, which I read earlier, if the government's maintaining that there was no evidence presented at the trial to show that the victim's use of the heroin distributed by the conspiracy was sufficient to cause his death, and that stipulation was based on the trial evidence showing the same, then that would be insufficient under the Burrage standard. And I see that my time is up, so I thank the court very much for the opportunity to present oral argument, and we would ask the court to respectfully reverse the district court. Thank you, and Mr. Nieman, the court appreciates your willingness to accept the appointment under the Criminal Justice Act. We thank both counsel for their appearance today. Cases submitted and…